IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARTHUR M. MILES,                    )
                                     )
            Petitioner,              )
                                     )
v.                                   )            Civ. A. No. 03-59-KAJ
                                     )
RAPHAEL WILLIAMS, Warden,            )
                                     )
            Respondent.              )

## MEMORANDUM OPINION

---

Arthur M. Miles. *Pro se* Petitioner.

Loren C. Meyers, Chief of Appeals Division, Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

---

September 19, 2005
Wilmington, Delaware



ORDAN, District Judge

I.    **INTRODUCTION**

Petitioner Arthur M. Miles was incarcerated in Delaware when he filed with the Court a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). For the reasons set forth below, I will dismiss his Petition without prejudice for failure to exhaust state remedies. (D.I. 2.)

II.   **PROCEDURAL AND FACTUAL BACKGROUND**

Miles was convicted of various felonies in the 1980's and conditionally released in May 1997. In June 1998, police officers alleged Miles had violated the terms of his conditional release, and he was held at Level V incarceration pending a parole violation hearing. The maximum expiration date for his Level V sentence for the underlying convictions was August 31, 2004.

On September 28, 1998, Miles' parole was revoked, and the Parole Board ordered that he was to be incarcerated at Level V for at least two years from September 28, 1998. *See State v. Miles*, 1999 WL 743334, at *1 (Del. Super. Ct. July 7, 1999). Also on September 28, 1998, Miles pled guilty to two new crimes: Possession of Cocaine and Possession of Drug Paraphernalia. Consequently, the Superior Court sentenced Miles to a total of one year at Level 3 probation, to be effective upon his release from Level V incarceration. *Id*.

In November 2000, the Parole Board certified Miles for parole, contingent upon his completing additional treatment programs and a period on work release. Miles was

eventually paroled on October 19, 2001, but in June 2002, parole officers filed another violation report. According to the report, Miles had committed a series of additional new offenses. After conducting a hearing in September 2002, the Parole Board revoked Miles' parole.

In January 2003, Miles filed a Petition for federal habeas relief in this Court. (D.I. 2.) The State filed an Answer, asking the Court to dismiss the habeas application without prejudice because Miles has not exhausted state remedies. (D.I. 13 at ¶ 3.)

## III.    THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards for analyzing the merits of a habeas petition. *See Woodford*, 538 U.S. at 206. Generally, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

2

## IV.    DISCUSSION

Miles' Petition asserts one claim: the Parole Board did not have jurisdiction over him at time of the events leading to the September 2002 revocation of parole because he was not on parole when he committed the violations. Rather, he contends that he was serving the probationary portion of his 1998 sentence for possession of drugs and drug paraphernalia. (D.I. 2.)

The State correctly acknowledges that this issue is cognizable on federal habeas review,[1] but asks the Court to dismiss Miles' habeas petition without prejudice for failure to exhaust state remedies. (D.I. 13 at ¶ 3.) According to the State, a "fair reading of state procedure indicates that the state courts will entertain an action by Miles that challenges the Parole Board, and given the absence of any state court decision clearly foreclosing such a result, Miles cannot demonstrate any reason to believe that he has no available state remedy." *Id.* The State asserts that Miles can file a petition for a writ of mandamus in the Superior Court to review the Parole Board's decision.

Miles filed a "Rebuttal" to the State's Answer, conceding his failure to exhaust state remedies. However, he asks the Court to excuse his failure to exhaust because a mandamus proceeding in the state courts would be futile.

---

[1]*See, e.g., Benchoff v. Colleran*, 404 F.3d 812, 815 n.4 (3d Cir. 2005)(explaining that challenges to parole procedures which would not necessarily result in speedier release should be brought pursuant to 42 U.S.C. § 1983, but challenges to parole proceedings that would necessarily result in speedier release are properly brought pursuant to 28 U.S.C. § 2254).

3

## A.    Mootness

Before reaching Miles' claim, I must first determine whether his challenge has become moot.[2]  Pursuant to Article III, Section 2, of the United States Constitution, federal courts can only consider ongoing cases or controversies.  *Lewis v. Continental Bank, Corp.*, 494 U.S. 472, 477-78 (1990);  *United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir. 2002)(finding that an actual controversy must exist during all stages of litigation).  If a habeas petitioner challenges his underlying conviction, and he is released during the pendency of his habeas petition, federal courts presume that "a wrongful criminal conviction has continuing collateral consequences" sufficient to satisfy Article III's injury requirement.  *Spencer v. Kemna*, 523 U.S. 1, 8 (1998); *see Steele v. Blackman*, 236 F.3d 130, 134 n.4 (3d Cir. 2001).  However, when a petitioner challenges a parole revocation, if "the reincarceration that he incurred as a result of [the parole revocation] is now over," and the petitioner is unconditionally released, courts will not presume Article III's injury requirement.  *Spencer*, 523 U.S. at 8.  Rather, the petitioner must prove continuing collateral consequences stemming from the parole revocation that are "likely to be redressed by a favorable judicial decision" in order to satisfy Article III's continuing case-or-controversy requirement.  *Id.* at 7 (internal citation omitted).

Here, Miles' Petition only challenges his parole revocation, not his underlying sentence or conviction.  The state record indicates that the maximum expiration date for

---

[2]The issue of mootness differs from the issue of custody.  Miles satisfies the "in custody" requirement of 28 U.S.C. § 2254 because he was "incarcerated by reason of the parole revocation at the time the petition was filed, which is all the "in custody" provision of 28 U.S.C. § 2254 requires."  *Spencer*, 532 U.S. at 7.

4

his parole revocation was September 30, 2004, approximately one year ago. Miles was incarcerated when he filed the instant Petition, and although he was released in December 2003, he was re-incarcerated in May 2004.

The present situation is unique because, even though it appears that the sentence underlying Miles' parole revocation claim has expired, he has not been unconditionally released. I cannot determine if his present incarceration is the result of a new offense, or related to his prior 1985 parole. Given the sentencing structure in Delaware,[3] it is possible that the maximum expiration date for the parole term in issue has been extended. If Miles' parole term has been extended, then there is a continuing injury sufficient to satisfy Article III's case-or-controversy requirement. Consequently, in an exercise of caution, I will review his Petition.[4]

## B.    Exhaustion

Absent exceptional circumstances, a federal court cannot grant federal habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).    AEDPA states, in pertinent part:

---

[3]In Delaware, a distinction is made between sentences imposed prior to the 1990 Truth-in-Sentencing Act ("non-TIS"), and those imposed after the effective date of TIS. A complete explanation is not necessary for the purpose of this opinion. Suffice it to say that if Miles' present incarceration is due to a new offense carrying a Level V sentence, it could interrupt his parole for his 1985 conviction, and therefore affect the maximum expiration date for that sentence. *See* 11 Del. C. Ann. §4216 (transition provisions); *Watson v. Burgan*, 610 A.2d 1364, 1369 (Del. 1992).

[4]As discussed *infra* at 7-11, I am dismissing the Petition without prejudice for failure to exhaust state remedies.    Even if Miles' Petition is moot for federal habeas purposes, it does not necessarily render his unexhausted state claim moot with respect to any relief warranted under state law.

5

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); 28 U.S.C. § 2254(c)(A petitioner "shall not be deemed to have exhausted remedies available . . . if he has the right under the law of the state to raise, by any available procedure, the question presented"). A petitioner must demonstrate that he fairly presented the habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at \*2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

Generally, if state remedies are still available, a federal court will dismiss without prejudice claims that have not been properly presented to the state courts in order to

6

allow the petitioner to exhaust his claims.  *Lines v. Larkins*, 208 F.3d 153, 159-60 (3d

Cir. 2000).   However,  "[i]f it appears that the prisoner's rights have become an 'empty

shell' or that the state process is a 'procedural morass' offering no hope of relief, then

the federal courts may excuse the prisoner from exhausting state remedies and may

directly consider the prisoner's constitutional claims."  *Id.* at 163.  The Third Circuit has

identified four situations where exhaustion would be futile:[5]

> (1)  "[A] state's highest court has ruled unfavorably on a claim involving facts
> and issues materially identical to those undergirding a federal habeas petition
> and there is no plausible reason to believe that a replay will persuade the court
> to reverse its field."  *Lines v. Larkin*, 208 F.3d 153, 162 (3d Cir. 2000); *Whitney
> v. Horn*, 280 F.3d 240, 250 (3d Cir. 2002).

> (2) "[T]he state provides no means of seeking the relief sought."  *Lines*, 208 F.3d
> at 162-63.

> (3) "[T]he state courts have failed to alleviate obstacles to state review presented
> by circumstances such as the petitioner's pro se status, poor handwriting, and
> illiteracy."  *Id.* at 163.

> (4) "[E]xhaustion is not possible because the state court would refuse on
> procedural grounds to hear the merits of the claims."  *Id.*

Here, Miles contends that when the Parole Board released him to Level 3 on

October 19, 2001, it constituted a discharge of his parole, thereby eliminating the

Parole Board's jurisdiction to revoke his parole in September 2002.  Although Miles

concedes his failure to exhaust state remedies, he asks the Court to reach the merits of

---

[5]If a petitioner satisfies exceptions one, two, or three, the federal court may
directly review the merits of the unexhausted claim.  However, if a petitioner satisfies
exception four, even though exhaustion would be futile, the claim is still procedurally
defaulted.  Consequently, the federal court could not review the merits of the
procedurally defaulted claim unless the petitioner demonstrates cause for, and
prejudice resulting from, the procedural default, or that a miscarriage of justice would
result if the federal court does not review the claim.  *Lines*, 208 F.3d at 165-66.

7

this claim because he disagrees with the State's contention that he can present this issue to the Superior Court in a mandamus proceeding and then fulfill the exhaustion requirement by appealing any adverse decision.

According to Miles, all of the Parole Board's decisions and actions are discretionary, thus, neither the Superior Court nor the Delaware Supreme Court has jurisdiction to maintain a mandamus proceeding regarding any of Board's decisions or actions. By phrasing his argument in this fashion, Miles attempts to implicate futility exception four,[6] whereby a state's refusal to hear the merits of a claim on procedural grounds excuses a petitioner's failure to exhaust state remedies.   In order for this exception to apply, however, the state procedure must "clearly foreclose" further state court review of the unexhausted claim. *Lines,* 208 F.3d at 163.

Miles correctly asserts that the Delaware courts can only issue writs of mandamus to direct the performance of a non-discretionary or ministerial duty.   *Semick v. Dept. of Corrections,* 477 A.2d 707, 708 (Del. 1984)( "[M]andamus will issue only to require performance of [an administrative agency's] clear legal or ministerial duty."). However, he incorrectly interprets  Delaware judicial opinions to stand for the proposition that all Parole Board decisions and actions are discretionary in nature.   A close examination of relevant Superior Court decisions indicates that the Superior Court

---

[6]I am not aware of any Delaware Supreme Court opinion denying a writ of mandamus "on a claim involving facts and issues materially identical" to his habeas claim.  Miles does not contend that the state of Delaware has not provided a method of relief; rather, he contends that the sole method available, the writ of mandamus, is a farce.  He  also does not contend that the courts have refused to alleviate certain obstacles.  Thus, Miles' argument does not fall within futility exceptions one, two, or three.

does not merely presume all Parole Board decisions to be discretionary, but rather, it makes an initial assessment as to whether the challenged action is discretionary and bases its jurisdictional decision on that determination.[7]  *See, e.g., Goodwyn v. Carroll*, 2002 WL 1767235, at *1 (Del. Super. Ct. Jul. 26, 2002)(stating that it "will assume without deciding that if the Board fails to perform a non-discretionary function, the Superior Court, by issuing a writ of mandamus to the Board, can order it to do its duty.").; *Folks v. Lichtenstadter*, 1995 WL 411652, at *2-3 (Del. Super. Ct. June 21, 1995)(refusing to grant mandamus relief after determining that the Parole Board's decision to grant parole is discretionary in nature).

Additionally, the Superior Court has indicated that it can review Parole Board decisions if there is evidence of "flagrant, unwarranted, or unauthorized action by the Parole Board." *Richmond v. Snyder*, 2002 WL 480942, at *3 (Del. Super. Ct. Jan. 22, 2002). Although, in *Richmond*, the Superior Court ultimately declined to issue the writ of mandamus, it did so only because it determined that the petitioner failed to demonstrate that the Board of Parole exceeded its authority or committed any other violation, not because it did not have jurisdiction to review the petition itself. *Richmond*, 2002 WL 480942, at *5 (Del. Super. Ct. Jan. 22, 2002).  Considering that Miles'

---

[7]The cases Miles cites to support his argument are inapposite. Two cases deal with the unavailability of the writ of habeas corpus as relief for Parole Board actions. *Moore v. State*, 171 A.2d 215 (Del. 1961); *Hall v. Carr*, 692 A.2d 888 (Del. 1997). The other two cases, *Bruton v. Carroll*, 843 A.2d 826 (Table), 2003 WL 22321049 (Del. Oct. 7, 2003) and *Semick v. Dept. of Corrections*, 477 A.2d 707, 708 (Del. 1984), found that mandamus relief was unavailable due to the discretionary nature of the particular actions involved.

9

habeas claim essentially challenges the Parole Board's authority to revoke his parole, it would appear that mandamus review might be available on this basis as well.

Having determined that the Superior Court does not summarily dismiss a petition for the writ of mandamus merely because the requested relief is premised on an action taken by the Parole Board, I cannot conclusively find that further state review of Miles' claim is clearly foreclosed. Accordingly, because I cannot excuse his failure to exhaust state remedies on the basis of futility, I will dismiss Miles' petition without prejudice to permit him to exhaust state remedies.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

However, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find the following debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. Id. "Where a plain procedural bar is present and the district court is correct to

10

invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

I conclude that Miles' Petition must be dismissed without prejudice because he has failed to exhaust state remedies. Consequently, Miles has failed to make a substantial showing of the denial of a constitutional right, and I decline to issue a certificate of appealability.

## VI. CONCLUSION

For the foregoing reasons, I conclude that Miles' Petition must be dismissed without prejudice for failure to exhaust state remedies. I also find no basis for the issuance of a certificate of appealability. An appropriate Order will follow.